993 F.2d 913
 301 U.S.App.D.C. 251
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Owen P. MILLS and John A. Borsari d/b/a Ocean Pines
Broadcasting Associates, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Ocean Pines Broadcasting Company, Intervenor.
 No. 92-1096.
 United States Court of Appeals, District of Columbia Circuit.
 April 30, 1993.
 
 Before: WALD, BUCKLEY, and WILLIAMS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record from the Federal Communications Commission and on the briefs filed by the parties. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir. Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that in No. 92-1096, the Commission's decision is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 In this case, appellants Owen P. Mills and John A. Borsari d/b/a Ocean Pines Broadcasting Associates ("Ocean Pines") challenge a Federal Communications Commission (FCC or Commission) order deeming their application for a new commercial FM radio station at Ocean Pines, Maryland unacceptable for filing. Ocean Pines contends that the dismissal of its application for failure to comply with the agency's antenna height limitations was arbitrary and capricious. More specifically, Ocean Pines argues that the Commission's action impinges on its right to a comparative hearing, constitutes a misapplication of the Commission's "hard look" application processing procedure and represents a departure from agency precedent. We find no merit in any of these arguments and therefore affirm the Commission's order.
 
 I. BACKGROUND
 
 5
 FCC regulations provide that, for the class of station at issue in this case, antennas not exceed 100 meters in height above average terrain ("HAAT"). 47 C.F.R. § 73.211(b). In order to determine HAAT, the applicant ascertains the average elevation of the terrain in eight directions, or radials, between 3 and 16 kilometers from the proposed station. Where a radial extends only over water, it is omitted from the computation of average terrain. Id. at § 73.313(d)(2)(i). However, if the radial extends over both water and land, the radial is included in the calculation. Id. at § 73.313(d)(2)(ii). The difference between the proposed antenna height and the average terrain elevation is the HAAT.
 
 
 6
 On March 30, 1987, Ocean Pines, along with about a dozen other aspirants, filed an application for a new commercial FM radio station in Maryland. The Ocean Pines application proposed to build an antenna 107 meters high with a HAAT of 100 meters. To arrive at this HAAT figure, Ocean Pines engaged a computer database which indicated that the elevation of three of the radials was zero and therefore that they were apparently located over sea water. Pursuant to FCC regulations, Ocean Pines then omitted these three radials and determined the average terrain elevation from the remaining five radials to be 7 meters. When subtracted from the proposed antenna height of 107 meters, this gave an antenna HAAT of 100 meters--precisely the Commission's designated limit.
 
 
 7
 Under the FCC's "hard look" approach to processing commercial FM applications, which was adopted to expedite the initiation of radio service and to increase efficiency in the review process, the FCC announces a one-time fixed filing period for all applications. Applications are required to include certain specified information within the filing period in order to be publicly announced as acceptable for tender. 50 Fed.Reg. 19940-41 (May 13, 1985). Next, the Commission allows candidates thirty days to amend their applications, and when that period expires, the applications are examined to determine whether they are in "compliance with the technical requirements for FM facilities" and thus acceptable for filing. Id. at 19941. Finally, even those applications deemed acceptable for filing may be dismissed without opportunity for curative amendments if the Commission determines that the application was mistakenly or inadvertently accepted. 47 C.F.R. §§ 73.3564(b), 73.3566(a). Ocean Pines' application cleared the first two hurdles but not the third.
 
 
 8
 After initially announcing Ocean Pines' application as acceptable for filing on January 14, 1988, the Commission, in an August 3, 1988 order designating a comparative hearing, dismissed Ocean Pines' application for violating the Commission's antenna HAAT limitation. J.A. at 3. The Commission found that because the HAAT value was actually 102.6 meters, the "application was inadvertently accepted for filing and [therefore] will be dismissed." Id. In denying a petition for review, the Commission explained more fully that the three radials omitted by Ocean Pines contained some land and therefore should have been used to compute the average terrain elevation:
 
 
 9
 [Ocean Pines] apparently assumed that the "sea level" reading [from the computer database] along those three radials indicated that the radials extended entirely over sea water and thus excluded them from the HAAT computation. However, examination of the contour and topographic site maps submitted with [Ocean] Pines' application ... indicates that there is in fact land area within the 3 to 16 kilometer range.... Therefore "that part of the radial extending from the 3 kilometers sector to the outermost portion of land area within the United States covered by the radial" should have been used in computing [Ocean] Pines' HAAT. See 47 C.F.R. § 73.313(d)(2)(ii). [Ocean] Pines failed to do so, and thus computed the HAAT averaging five rather than eight radials. The resulting error caused its application to specify facilities greater than the maximum permitted....
 
 
 10
 J.A. at 1-2 (footnote omitted). According to the Commission's calculations, the average elevation of all eight radials was approximately 4.4 meters, which when subtracted from the proposed antenna height of 107 meters, yielded an unacceptably high HAAT of 102.6 meters. On the basis of this violation, the Commission rejected the petition for review, concluding that Ocean Pines' application was correctly dismissed and that no opportunity for corrective amendments was warranted. This appeal followed.
 
 II. ANALYSIS
 
 11
 Ocean Pines does not dispute that the three radials in fact extend partly over land but instead argues that the Commission's "hard look" procedure for processing applications violated its right to a comparative hearing under Ashbacker Radio Corporation v. FCC, 326 U.S. 327 (1945). Alternatively, Ocean Pines contends that the Commission misapplied the "hard look" test which it says requires only that applications contain all of the required data, and not that the applications comply absolutely with all the minutiae of the Commission's technical requirements. Unfortunately for Ocean Pines, both of these arguments were recently addressed and rejected by this court in Malkan FM Associates v. FCC, 935 F.2d 1313 (D.C.Cir.1991).
 
 
 12
 In that case, the Commission found two applications for FM radio stations near the United States-Mexico border to be unacceptable for filing because they proposed antennae HAATs above the limit set by treaty between this country and Mexico. The applications were dismissed without leave to file curative amendments under the Commission's "hard look" procedure. On appeal, the applicants argued that there was inadequate notice of the height limitation in the treaty and that the "hard look" rules did not make clear that noncompliance with treaty provisions rendered an application unacceptable and precluded the opportunity for corrective amendments. This court disagreed, finding that the Commission had provided adequate notice of the treaty requirement and that the Commission's rules clearly identified, as an element of "acceptability," antenna height which could be " 'limited in certain cases by international treaty.' " Id. at 1318-19 (quoting 50 Fed.Reg. 19,946).
 
 
 13
 The present case falls clearly within the rule established by Malkan. As we noted there, the FCC's "hard look" procedure eliminates from competition in a comparative hearing all applications which fail to meet the requirements for acceptability, and prohibits the filing of curative amendments after the designated thirty day period because to do otherwise " 'poses too great a threat to the orderly functioning' " of the application review process. Id. at 1316 (quoting 50 Fed.Reg. 19,941). If denying the applicants in Malkan the opportunity to participate in a comparative hearing was not arbitrary and capricious, it is difficult to see how the Commission's comparable treatment of Ocean Pines can be faulted.
 
 
 14
 Further, we explained in Malkan that "the FCC gave adequate notice that FM applications would be found 'acceptable' for filing only if they fully complied with the Commission's technical rules, including antenna height limits." Id. at 1315. Again, if requiring the Malkan applicants to comply with a treaty provision limiting antennas to 91 meters was permissible, we see no reason why Ocean Pines cannot be required to adhere strictly to the 100 meter limit in the Commission's regulations. No other applicant was disqualified for proposing antenna HAATs above 100 meters. The only factor identified by Ocean Pines distinguishing its situation from the applicants in Malkan was that in Malkan the applications were rejected before being accepted as suitable for filing, whereas in the present case, Ocean Pines' application was dismissed after the Commission concluded that it had been improperly deemed acceptable for filing. Appellant's Brief at 8-9. However, Ocean Pines offers no reason why this difference should be material. Certainly the Commission is entitled to dismiss applications inadvertently or incorrectly accepted for filing once the error is discovered. See 47 C.F.R. §§ 73.3564(b), 73.3566(a).
 
 
 15
 The third and final argument advanced by Ocean Pines is that the Commission acted arbitrarily and capriciously by departing from its precedent in Naguabo Broadcasting Company, 3 F.C.C.R. 4634 (1988) and Ocean Waves Broadcasting, 3 F.C.C.R. 4637 (1988). We believe, however, that the Commission clearly and adequately distinguished those cases. First, in Naguabo, the Commission found an application to be acceptable for filing despite the applicant's failure to include a radial because even with the error corrected, the application still complied with the Commission's regulations. By contrast, as the Commission correctly observed, rectifying Ocean Pines' error renders its application in violation of the antenna height regulations. J.A. at 2.
 
 
 16
 At issue in Ocean Waves was an FCC regulation providing that even if there was no land in a radial between 3 and 16 kilometers from the proposed station, the radial should nevertheless be included in the average terrain computation if there was land "encompassed" between 16 kilometers and the proposed 50 uV/m contour of the station (a measure of signal strength). The Commission acknowledged that the regulation was ambiguous and allowed candidates to amend their applications even after the thirty day period for amendments had expired. 3 F.C.C.R. at 4639. In the present case, however, Ocean Pines does not point to any ambiguity in the Commission's radial rule, 47 C.F.R. § 73.313(d)(2)(ii), that might justify granting leave to amend. Nor does Ocean Pines identify any reason why the Commission's distinguishing of either Naguabo or Ocean Waves is infirm.
 
 
 17
 For the foregoing reasons, the Commission's decision to dismiss Ocean Pines' application is
 
 
 18
 Affirmed.